UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 1:22-cv-20378-GAYLES

**COMMODITY FUTURES TRADING COMMISSION**,

      Plaintiff,

v.

**THE W TRADE GROUP LLC, LARRY RAMOS MENDOZA AND JOSEPH CARVAJALES**,

      Defendants,

_____/

## DEFAULT FINAL JUDGMENT

**THIS CAUSE** comes before the Court on Plaintiff Commodity Futures Trading Commission's ("Commission" or "CFTC") Motion for Final Judgment by Default, Permanent Injunction, Restitution, Civil Monetary Penalties, and Ancillary Equitable Relief against Defendants The W Trade Group LLC ("WTG") and Larry Ramos Mendoza ("Ramos") ("Motion"). [ECF No. 33]. The Court has considered the Motion and the record and is otherwise fully advised. Based thereon, the Court finds that good cause exists for entry of the Final Judgment. Accordingly, the CFTC's Motion is **GRANTED**.

**I.   BACKGROUND**

On February 7, 2022, the CFTC filed a Complaint for Injunctive and Other Equitable Relief, Restitution, and Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations ("Complaint") in the above-captioned action against WTG and Ramos seeking injunctive and other equitable relief for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* and CFTC Regulations ("Regulations), 17 C.F.R. pt. 1–190 (2022).

1

[ECF No. 1]. The Complaint alleges that from at least June 2013 through June 2020 (the "Relevant Period"), WTG, by and through the actions of its employees and agents, including but not limited to, Ramos, fraudulently solicited customers to open individual trading accounts in order to trade in, among other things, commodity futures ("futures"), retail foreign currency on a leveraged or margined basis ("forex") and/or options on commodity futures contracts ("options"). In their customer solicitations, Defendants made numerous false and misleading material statements concerning, among other things, whether WTG actually traded on behalf of WTG's customers, the profitability of WTG's trading, and WTG's ability to minimize risk. Defendants also sent customers falsified account statements through the WTG mobile application and sent fake 1099-INT tax forms to at least one customer. The Complaint further alleges that WTG, through the actions of Ramos, misappropriated more than $19 million of customer funds. By virtue of this conduct, WTG and Ramos violated 7 U.S.C. §§ 6b(a)(1)(A)–(C), 6b(a)(2)(A)–(C), and 6c(b), and 17 C.F.R. §§ 5.2(b)(1)–(3) and 33.10(a)–(c) (2022).

On February 7, 2022, the Clerk of the Court issued a Summons in a Civil Action ("Summons") to WTG and Ramos. On April 22, 2022, the Commission served WTG's registered agent with the Commission's Complaint. [ECF No. 8]. WTG's response was due on or before May 13, 2022, but it failed to answer or respond. The Commission filed an Application for Clerk's Entry of Default against WTG on June 30, 2022, [ECF No. 14], and on that same day, the Clerk of the Court entered the Default. [ECF No. 15].

On May 6, 2022, pursuant to Fed. R. Civ. P. 4(e)(1), and Chapter 49 of the Florida Statutes, the CFTC moved to effect service of the Complaint and Summons on Ramos by publication. Finding good cause for service by publication, on May 9, 2022, the Court issued an Order granting the CFTC's motion. [ECF No. 10]. The Commission effectuated service on Ramos by publication, consistent with the Court's Order. Ramos failed to answer or otherwise respond to the

Commission's Complaint, and the Commission filed an Application for Clerk's Entry of Default on July 21, 2022. [ECF No. 18]. The Court entered a Clerk's Entry of Default against Ramos on the same day. [ECF No. 19].

Accordingly, the CFTC now moves for final judgment by default against Defendants WTG and Ramos, an order of permanent injunctive relief, the imposition of a restitution obligation, and civil monetary penalties. [ECF No. 33].

## II.     FINDING OF FACTS AND CONCLUSIONS OF LAW

### A.     Findings of Fact

#### 1.     The Parties

1. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Regulations.

2. Defendant Larry Ramos Mendoza is an individual believed to be residing in Miami, Florida. During the Relevant Period, he was the Managing Director and sole officer of WTG. He has never been registered with the Commission

3. Defendant The W Trade Group LLC is a Delaware company formed in June 2013, authorized to transact business in Florida. The formation documents list Ramos as WTG's sole officer, director, and agent. Its principal place of business is located at 5201 Blue Lagoon Drive, Miami, FL, 33126. WTG has never been registered with the Commission.

#### 2.     Ramos' Fraudulent Solicitation

4. During the Relevant Period, WTG and Ramos fraudulently solicited members of the public throughout the United States and abroad to engage in, among other things, futures, forex, and/or options trading. In its fraudulent solicitations, WTG, through the actions of Ramos, made numerous false statements to WTG customers and prospective customers.

5. WTG, through the actions of Ramos, misrepresented to prospective WTG customers that WTG would trade futures, forex, and/options on behalf of customers. After discussions with Ramos about the futures contracts WTG purportedly was trading, prospective customers were given an application to open individualized trading accounts at an online futures commission merchant, which included a list of commodities their funds purportedly would trade. In fact, WTG never traded on behalf of customers in individualized or pooled accounts.

6. WTG, through the actions of Ramos, also claimed to prospective WTG customers that WTG traded customer funds using a commodity trading algorithm Ramos had developed, and each trade made using the algorithm would generate up to a 4% return. Ramos claimed to one potential customer that he had software that "looked at the last 80 years of commodities behavior," and it would put out an alert to tell you where to put the money. This was untrue. No trading was ever done by WTG for its customers, much less with a commodity trading algorithm.

7. Additionally, WTG, through the actions of Ramos, further claimed falsely that WTG customers would only risk 2% of their funds per transaction, and if WTG lost 15 consecutive transactions for a maximum total loss of 30%, it would immediately cease all transactions. Ramos told prospective customers that "his expertise was to protect investments" and that if he saw the risk going too high, WTG would pull out of the trade. This was untrue because WTG did not open any customer accounts, nor did it trade customer funds.

8. WTG, through the actions of Ramos, also falsely claimed that prospective customers would have access to their trading accounts through a WTG mobile application, where they could review their account statements, and could withdraw their funds at any time. However, the WTG mobile application accounts that customers were able to access, showed fraudulent account statements that represented false trading profits.

9.     In soliciting customers, WTG made no attempt to determine if customers were eligible contract participants ("ECPs") under the Act. In fact, most, if not all, of WTG's customers were not ECPs.

### 3.     WTG and Ramos Engaged in Misappropriation

10.    WTG received approximately $24 million from at least 220 customers for the purported purpose of trading futures, forex, and/or options. Rather than use customer funds for trading, WTG and Ramos misappropriated these funds, which had been deposited in WTG bank accounts opened by WTG agent, Ramos. WTG and Ramos used customer money for Ramos' personal expenses and salary, and WTG business expenses.

11.    WTG and Ramos also diverted customer funds to make Ponzi scheme-like payments to customers who requested withdrawals from WTG.

12.    WTG and Ramos appear to have used customer money to maintain and operate a boat named "The Blessing." Ramos used the boat to entertain and solicit customers and to give the impression that they were operating a successful business. In one instance, Ramos deposited $109,000 of checks consisting of customer money to a WTG bank account in October of 2018 and then transferred $9,000 of it to a separate WTG-controlled bank account twelve days later. The following day, Ramos paid for a boat charter totaling $3,769.80 from the second WTG account. Altogether, Ramos, using WTG accounts, spent $50,000 on boating expenses, including marina fees, maintenance and repairs, and charters.

13.    WTG customers attempted unsuccessfully to withdraw money from their supposedly profitable accounts. For example, one customer asked for his funds to be returned, and WTG, through the actions of Ramos, provided the customer with a check, but asked him to wait two weeks prior to depositing the funds. After two weeks, the customer attempted to deposit the check, but was told by his bank that there were insufficient funds in WTG's account. When the

customer confronted Ramos and threatened to go to the police, Ramos told him that he would have better luck getting his funds back without Ramos in prison. The fraudulent scheme ended in June 2020, at which time WTG and Ramos had misappropriated all of their customers' money. In total, WTG customers suffered $7,482,680 in losses as a result of WTG's and Ramos' misappropriation.

### 4. WTG and Ramos Sent False Records to Customers

14. Throughout the Relevant Period, WTG, through the actions of Ramos, sent customers falsified account statements through the WTG mobile application. Rather than showing that WTG had not actually opened trading accounts on behalf of customers with their funds, the WTG mobile application showed false balances and profits for each customer.

15. WTG, through the actions of Ramos, sent fake 1099-INT tax forms to at least one WTG customer. That fake tax form purported to show a trading profit of $79,513, when, in fact, there had been no trading of customer funds through WTG. WTG, through the actions of Ramos, sent WTG customers falsified account statements through the WTG mobile application.

16. As part of their scheme, WTG and Ramos used the U.S. mail or other instrumentalities of interstate commerce, including telephone and internet, to (1) receive funds from customers; (2) disseminate marketing documents to actual and potential customers; and (3) disseminate false statements to actual and potential customers.

17. At all times during the Relevant Period, Ramos was WTG's Managing Director and sole officer. Ramos possessed both general control over WTG's business and specific control over the conduct underlying WTG's violations. Ramos was the ultimate decision maker and controlled all aspects of WTG's business. Ramos, in conjunction with other employees, managed WTG's day-to-day operations and engaged in the solicitation of new and existing customers. Ramos opened and had signatory authority on all WTG bank accounts in WTG's name.

### B. Conclusions of Law

#### 1. Jurisdiction and Venue Are Proper

18. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder. With respect to Defendants' purported forex transactions, the Commission also has jurisdiction over the conduct and transactions at issue pursuant to § 2(c)(2)(C).

19. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Defendants reside in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred within this District.

#### 2. WTG and Ramos violated 7 U.S.C. § 6b(a)(1)(A)–(C)

20. 7 U.S.C. § 6b(a)(1)(A)–(C), makes it unlawful:

> (1) [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . .
>
> > (A) to cheat or defraud or attempt to cheat or defraud the other person;
> >
> > (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract for . . . the other person[.]

21. During the Relevant Period, WTG and Ramos violated 7 U.S.C. § 6b(a)(1)(A)–(C) by, among other things: (1) misappropriating customer funds; (2) making, causing to be made, and distributing reports or statements to customers that contained false information; and (3) making material misrepresentations to WTG's customers and prospective customers.

22. Defendants engaged in the acts and practices described above willfully, knowingly, or with reckless disregard for the truth.

23. Each act of misappropriation, misrepresentation, and issuance of a false statement is a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)–(C).

24. Ramos directly or indirectly controlled WTG and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting WTG's violations of 7 U.S.C. § 6b(a)(1). Therefore, pursuant to 7 U.S.C. § 13c(b), Ramos is liable for each of WTG's violations of 7 U.S.C. § 6b(a)(1)(A)–(C) as a controlling person of WTG.

25. The acts of Ramos as described in the Complaint, were done within the scope of his employment and/or agency with WTG. Therefore, pursuant to 7 U.S.C § 2(a)(1)(B) and 17 C.F.R. § 1.2, WTG is liable as a principal for each act or failure of Ramos that constitutes violations of 7 U.S.C. § 6b(a)(1)(A)–(C).

### 3. WTG and Ramos violated 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3)

26. 7 U.S.C. § 6b(a)(2)(A)–(C) makes it unlawful:

> (2) [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market—

8

> (A) to cheat or defraud or attempt to cheat or defraud the other person;
>
> (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person . . . .

27. 7 U.S.C. § 6b(a)(2)(A)–(C) applies to forex transactions as if they were futures contracts pursuant to 7 U.S.C. § 2(c)(2)(C)(iv).

28. 17 C.F.R. § 5.2(b)(1)–(3) makes it unlawful:

> [F]or any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail foreign exchange transaction:
>
> (1) To cheat or defraud or attempt to cheat or defraud any person;
>
> (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or
>
> (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

29. During the Relevant Period, WTG and Ramos violated Section 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) by, among other things: (i) misappropriating customer funds; (ii) making, causing to be made, and distributing reports or statements to customers that contained false information; and (iii) making material misrepresentations to WTG's customers and prospective customers in connection with purported forex trading.

30. Defendants engaged in the acts and practices described above willfully, knowingly, or with reckless disregard for the truth.

31.     Each act of misappropriation, misrepresentation, and issuance of a false statement, is a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3).

32.     Ramos directly or indirectly controlled WTG and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting WTG's violations of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3). Therefore, pursuant to 7 U.S.C. § 13c(b), Ramos is liable for each of WTG's violations of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3) as a controlling person of WTG.

33.     The acts of Ramos were done within the scope of his employment and/or agency with WTG. Therefore, pursuant to 7 U.S.C § 2(a)(1)(B) and 17 C.F.R. § 1.2, WTG is liable as a principal for each of Ramos' acts in violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1)–(3).

**4.     WTG and Ramos violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a)–(c)**

34.     Under 7 U.S.C. § 6c(b), "[n]o person shall offer to enter into, enter into or confirm the execution of any transaction involving any commodity regulated under this Act which is of the character of, or is commonly known in the trade as, an "option". . . "bid". . . "offer" . . . "put" [or] "call" . . . contrary to any rule [or] regulation, of the Commission . . . prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe."

35.     17 C.F.R. § 33.10(a)–(c) provides that:

> It shall be unlawful for any person directly or indirectly—(a) To cheat or defraud or attempt to cheat or defraud any other person; (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or (c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or

the maintenance of, any commodity option transaction.

36. During the Relevant Period, WTG and Ramos violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a)–(c) by, among other things: (i) misappropriating customer funds; (ii) making, causing to be made, and distributing reports or statements to customers that contained false information; and (iii) making material misrepresentations to WTG's customers and prospective customers in connection with purported options transactions.

37. Defendants engaged in the acts and practices described above willfully, knowingly, or with reckless disregard for the truth.

38. Each act of misappropriation, misrepresentation, and issuance of a false statement is a separate and distinct violation of 7 U.S.C. § 6c(b) and 17 C.F.R § 33.10(a)–(c).

39. Ramos directly or indirectly controlled WTG and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting WTG's violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a)–(c). Therefore, pursuant to 7 U.S.C. § 13c(b), Ramos is liable for each of WTG's violations under 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a)–(c).

40. The acts of Ramos were done within the scope of his employment and/or agency with WTG. Therefore, pursuant to 7 U.S.C § 2(a)(1)(B), 17 C.F.R. § 1.2, WTG is liable as a principal for each act or failure of Ramos that constitute violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a)–(c).

### III. PERMANENT INJUNCTION

Accordingly, it is **ORDERED AND ADJUDGED** that:

41. Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-1, Defendants WTG and Ramos are permanently restrained, enjoined, and prohibited from directly or indirectly:

  a. Misappropriating customer funds, or making material misrepresentations with scienter about trading in futures, forex and/or options, and issuing false statements, in violation of 7 U.S.C. §§ 6b(a)(1)(A)–(C), 6b(a)(2)(A)–(C), and 6c(b), and 17 C.F.R. §§ 5.2(b)(1)–(3) and 33.10(a)–(c) (2023).

42. Defendants WTG and Ramos are also permanently restrained, enjoined, and prohibited from directly or indirectly:

  a. Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40));

  b. Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2022), for Ramos' personal account or for any account in which he has a direct or indirect interest;

  c. Having any commodity interests traded on their behalf;

  d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

  e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

  f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2022); and/or,

  g. Acting as a principal (as that term is defined in 17 C.F.R.§ 3.1(a) (2023)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration, or required to

be registered with the CFTC except as provided for in 17 C.F.R.§ 4.14(a)(9) (2022).

## IV. RESTITUTION AND CIVIL MONETARY PENALTIES

### A. Restitution

43. WTG and Ramos shall pay, jointly and severally, restitution in the amount of Seven Million, Four Hundred Eighty-Two Thousand, Six Hundred and Eighty Dollars ($7,482,680) ("Restitution Obligation"), representing losses to persons proximately caused by such violations described above.

44. If the Restitution Obligation is not paid immediately in full, post-judgment interest shall accrue on the unpaid portion of the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

45. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from WTG and Ramos and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

46. WTG and Ramos shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "Defendant The W Trade Group RESTITUTION Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 320 South Canal Street, 24th FL, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the

name and docket number of this proceeding. WTG and Ramos shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

47. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers/pool participants/clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

48. WTG and Ramos shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. WTG and Ramos shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

49. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name

and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

50. The amounts payable to each customer, pool participant, or client shall not limit the ability of any customer, pool participant, or client from proving that a greater amount is owed from WTG and Ramos or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer, pool participant, or client that exist under state or common law.

51. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of WTG and Ramos who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by WTG and Ramos to ensure continued compliance with any provision of this Order and to hold WTG and Ramos in contempt for any violations of any provision of this Order.

52. To the extent that any funds accrue to the U.S. Treasury for the satisfaction of WTG's and Ramos' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

53. WTG and Ramos shall pay, jointly and severally, a civil monetary penalty in the amount of Twenty-Two Million, Four Hundred Forty-Eight Thousand and 40 Cents $22,448,040.00 ("CMP Obligation"), which represents triple the Defendants' monetary gain from the violations listed above in accordance with 7 U.S.C. § 13a-1(d)(1). If the CMP Obligation is not paid in full immediately, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

54. WTG and Ramos shall pay the CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, WTG and Ramos shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. WTG and Ramos shall accompany payment of the CMP Obligation with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding. WTG and Ramos shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

C.     **Provisions Related to Monetary Sanctions**

55. Partial Satisfaction: Acceptance by the Commission/CFTC or the Monitor of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission/CFTC's right to seek to compel payment of any remaining balance.

## V.     MISCELLANEOUS PROVISIONS

56.     Notice: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

Notice to Commission:

Rick Glaser
Deputy Director
1155 21st St., N.W.
Washington, DC 20581

Notice to Defendants WTG and Ramos:

Notice to Defendant Joseph Carvajales:

8992 Shadow Wood Blvd
Coral Springs, FL 33071-6611

Notice to NFA:

Daniel Driscoll, Executive Vice President, COO
National Futures Association
320 South Canal Street, 24th FL
Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of this action.

57.     Change of Address/Phone: Until WTG and Ramos satisfy in full the Restitution and CMP Obligations under this Order, Defendants WTG and Ramos shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

58.     Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

59. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by WTG and Ramos to modify or for relief from the terms of this Order.

60. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon WTG and Ramos, upon any person under the authority or control of WTG and Ramos, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with WTG and Ramos.

61. There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order for Final Judgment by Default* forthwith and without further notice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of October, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record